IN THE SUPREME COURT OF NORTH CAROLINA

No. 296A22

Filed 15 December 2023

FREEDOM MORRIS

v.

DAVID RODEBERG, M.D., individually and in his individual capacity, and PITT COUNTY MEMORIAL HOSPITAL, INCORPORATED d/b/a VIDANT MEDICAL CENTER

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 285 N.C. App. 143 (2022), reversing an order entered on 16 March 2021 by Judge J. Carlton Cole in the Superior Court, Pitt County. Heard in the Supreme Court on 19 September 2023.

> *Zaytoun Ballew & Taylor, PLLC, by Matthew D. Ballew and Robert E. Zaytoun; The Law Offices of John M. McCabe, P.A., by Spencer S. Fritts; and James A. Barnes IV and Ryan D. Oxendine for plaintiff-appellant.*
>
> *Ellis & Winters LLP, by Alex J. Hagan, Michelle A. Liguori, and Chelsea Pieroni, for defendant-appellee David Rodeberg, M.D.; and Cranfill Sumner LLP, by Colleen N. Shea and Steven A. Bader, for defendant-appellee Pitt County Memorial Hospital, Incorporated d/b/a Vidant Medical Center.*
>
> *Roberts & Stevens, PA, by David C. Hawisher, for NCADA, amicus curiae.*
>
> *Tin Fulton Walker & Owen PLLC, by Sam McGee and Gagan Gupta, for North Carolina Advocates for Justice, amicus curiae.*

ALLEN, Justice.

A divided panel of the Court of Appeals interpreted the relevant statute of limitations to bar the medical malpractice claims alleged by plaintiff against

defendants. It also rejected plaintiff's argument that the statute of limitations so construed violates his constitutional right to the equal protection of the laws. We conclude that the Court of Appeals correctly applied the statute of limitations to plaintiff's claims. Plaintiff's equal protection argument is not properly before this Court, and we therefore decline to address it.

This case arises from defendants' motions to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Rules of Civil Procedure, so we must take the complaint's factual allegations as true. *Blue v. Bhiro*, 381 N.C. 1, 2 (2022). According to those allegations, plaintiff Freedom Morris—then thirteen years old—sought emergency treatment on 23 February 2015 at defendant Vidant Medical Center for abdominal pain caused by acute appendicitis. Defendant David Rodeberg, M.D., operated on plaintiff the next day to remove his appendix. Despite complaining of intense pain following surgery, plaintiff was discharged on 25 February 2015. He returned to defendant hospital one day later with a fever and sharp abdominal pain. A second surgery performed by a different doctor revealed that defendant Rodeberg had not removed the entire appendix. The remaining portion had ruptured, spreading infection inside plaintiff's body. Plaintiff was discharged from defendant hospital a second time on 4 March 2015. Severe abdominal pain and a high fever prompted a return visit on 17 March 2015. Plaintiff underwent a third surgery, this time to drain a pelvic abscess. He was discharged yet again on 20 March 2015.

More than five years later, on 14 September 2020, plaintiff filed a lawsuit

against defendants in the Superior Court, Pitt County, alleging medical malpractice and medical negligence. Defendants responded with motions asking the trial court to dismiss the complaint. In their motions, defendants argued that plaintiff filed the complaint outside the statute of limitations for the medical malpractice claims of persons who are over ten years old but under eighteen years old when their claims accrue. Specifically, defendants asserted that, pursuant to N.C.G.S. § 1-15(c) and N.C.G.S. § 1-17(c), plaintiff had three years from 24 February 2015—the date on which defendant Rodeberg operated on plaintiff—to file suit against defendants.

Plaintiff submitted a brief to the trial court opposing defendants' motions. Therein plaintiff argued that N.C.G.S. § 1-17(b) is the relevant statute of limitations for his claims and that, consequently, he had until age nineteen to commence this litigation. Plaintiff further contended that if the trial court were to interpret subsections 1-15(c) and 1-17(c) to require him to file suit before he turned eighteen and could make his own legal decisions, the result would be a violation of his right to the equal protection of the laws under the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution.

On 16 March 2021, the trial court entered an order denying defendants' motions, thereby clearing the way for plaintiff to proceed with his lawsuit. Defendants filed a notice of appeal from the trial court's order. They also filed a petition for writ of certiorari with the Court of Appeals asking that body to review the order even if defendants lacked a legal right to an immediate appeal. *See* N.C. R. App.

P. 21(a)(1) ("The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals . . . when no right of appeal from an interlocutory order exists . . . ."). The Court of Appeals subsequently allowed defendants' petition for certiorari. *Morris v. Rodeberg*, 285 N.C. App. 143, 147–48 (2022).

On 16 August 2022, a divided panel of the Court of Appeals issued an opinion reversing the trial court's order. *Id.* at 144. The majority noted that although subsection 1-15(c) specifies a three-year statute of limitations for most claims of medical malpractice, the provisions in subsection 1-17(c) control when the cause of action accrued while the plaintiff was still a minor. *Id.* at 151. As interpreted by the majority, subsection 1-17(c) adopts the three-year limitations period in subsection 1-15(c) for the medical malpractice claims of minors except when the limitations period would expire before the minor's tenth birthday, in which case the statute of limitations must be calculated in accordance with N.C.G.S. § 1-17(c)(1). *Id.* at 149–51. Inasmuch as plaintiff's lawsuit did not fall under subdivision 1-17(c)(1), the majority held that it was time-barred under subsection 1-17(c) "because [plaintiff's] medical malpractice action accrued when [plaintiff] was thirteen years old, and he filed suit five years later." *Id.* at 151.

Turning to plaintiff's constitutional argument, the majority found no merit in plaintiff's contention that applying a three-year statute of limitations to his claims would deprive him of his constitutional right to equal protection. *Id.* at 151–52. For

reasons discussed later in this opinion, this issue is not properly before us.

The dissenting judge at the Court of Appeals would have affirmed the trial court's order denying defendants' motions to dismiss the complaint. *Id.* at 158–59 (Hampson, J., dissenting). According to the dissenting judge, when a minor plaintiff's medical malpractice claims are not subject to any of the exceptions in subdivisions 1-17(c)(1) through (c)(3), a court must resort to subsection 1-17(b) to assess their timeliness. *Id.* at 156–57. As applied by the dissenting judge to the facts of this case, subsection 1-17(b) "required [plaintiff] to bring this lawsuit before reaching age nineteen." *Id.* at 158. Because plaintiff filed the complaint before his nineteenth birthday, the dissenting judge concluded that his claims were timely. *Id.* The dissenting judge also endorsed plaintiff's argument that "if [subs]ection 1-17(c) did operate to require [p]laintiff to bring suit as a sixteen year old, while still under a legal disability and legally unable to do so, . . . such an application of the statute would violate his federal and state constitutional right to equal protection of the laws." *Id.*

Plaintiff filed a notice of appeal from the decision of the Court of Appeals pursuant to N.C.G.S. § 7A-30(2), which then provided a right of appeal to this Court "from any decision of the Court of Appeals rendered in a case . . . [i]n which there is a dissent when the Court of Appeals is sitting in a panel of three judges."[1] N.C.G.S.

---

[1] The General Assembly repealed N.C.G.S. § 7A-30(2) in 2023. An Act to Make Base Budget Appropriations for Current Operations of State Agencies, Departments, and Institutions, S.L. 2023-134, § 16.21.(d)–(e),

§ 7A-30(2) (2021).

We review a lower court's interpretation of statutes *de novo. DTH Media Corp. v. Folt*, 374 N.C. 292, 299 (2020). "Under a *de novo* review, the [C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337 (2009) (quoting parenthetical and internal quotation marks omitted).

To resolve whether plaintiff's claims for medical malpractice and negligence are time-barred, we must construe N.C.G.S. § 1-15 and N.C.G.S. § 1-17 together. "It is, of course, a fundamental canon of statutory construction that statutes which are *in pari materia, i.e.*, which relate or are applicable to the same matter or subject, . . . must be construed together in order to ascertain legislative intent." *Carver v. Carver*, 310 N.C. 669, 674 (1984).

By enacting a statute of limitations, the General Assembly "establish[es] a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." *Statute of Limitations, Black's Law Dictionary* (11th ed. 2019). "Once a defendant properly raises a statute of limitations defense, the plaintiff must show that she initiated the action within the applicable time period." *King v. Albemarle Hosp. Auth.*, 370 N.C. 467, 469 (2018).

Statutes of limitations are blunt instruments. They bar claims filed outside

---

https://www.ncleg.gov/Sessions/2023/Bills/House/PDF/H259v7.pdf. The repeal applies to all cases filed with the Court of Appeals on or after 3 October 2023, when the repealing legislation took effect. *Id.* § 16.21(e).

their temporal boundaries regardless of whether the claims have merit. Nonetheless, such statutes exist to promote—not defeat—the ends of justice. Statutes of limitations represent the legislature's determination of the point at which the right of a party to pursue a claim must yield to competing interests, such as the unfairness of requiring the opposing party to defend against stale allegations. *Ord. of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–49 (1944); *see also Estrada v. Burnham*, 316 N.C. 318, 327 (1986) ("With the passage of time, memories fade or fail altogether, witnesses die or move away, evidence is lost or destroyed; and it is for these reasons, and others, that statutes of limitations are inflexible and unyielding and operate without regard to the merits of a cause of action."), *superseded by statute on other grounds as stated in Turner v. Duke Univ.*, 325 N.C. 152, 163–64 (1989).

"Subsection 1-15(c) establishes [a] standard three-year statute of limitations for medical malpractice actions." *King*, 370 N.C. at 469. The General Assembly enacted the provision "in an attempt to preserve medical treatment and control malpractice insurance costs, both of which were threatened by the increasing number of malpractice claims." *Roberts v. Durham Cnty. Hosp. Corp.*, 56 N.C. App. 533, 541 (1982), *quoted in Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc.*, 313 N.C. 230, 237 (1985).

In general, the three-year statute of limitations imposed by subsection 1-15(c) begins running "at the time of the occurrence of the last act of the defendant giving

rise to the cause of action." N.C.G.S. § 1-15(c) (2021). It can be extended to as many as four years if the plaintiff's injuries are "not readily apparent to the [plaintiff] at the time of [their] origin." *Id.*

This would be an easy case if subsection 1-15(c) were the only statutory provision on point. Plaintiff did not file his medical malpractice claims against defendants within three years of his first surgery, and this case does not involve latent injuries. Plaintiff's claims are undeniably time-barred if subsection 1-15(c) controls.

The legislature has recognized, however, "that individuals under certain disabilities are unable to appreciate the nature of potential legal claims and take the appropriate action." *King*, 370 N.C. at 470. For most kinds of civil claims, subsection 1-17(a) pauses the statute of limitations if the individual with the claim "is under a disability at the time the cause of action accrued." N.C.G.S. § 1-17(a) (2021). In such cases, the limitations period does not begin to run until "the disability is removed." *Id.*

Subsection 1-17(a) defines "a person [who] is under a disability" to include anyone who "is within the age of 18 years." N.C.G.S. § 1-17(a), (a)(1). "The disability of minority can be removed by the appointment of a [guardian ad litem] or by the passage of time, whichever occurs first." *King*, 370 N.C. at 471. Accordingly, when a statute of limitations has been tolled under subsection 1-17(a) based on a plaintiff's age, it starts running as soon as the court appoints a guardian ad litem to pursue the

plaintiff's claims or the plaintiff turns eighteen years old.

"Whereas the tolling provision of subsection [1-17](a) focuses on general torts, the tolling provision of subsection [1-17](b) specifically addresses professional negligence claims . . . ." *Id.*

> *Notwithstanding the provisions of subsection (a) of this section, and except as otherwise provided in subsection (c) of this section,* an action on behalf of a minor for malpractice arising out of the performance of or failure to perform professional services shall be commenced within the limitations of time specified in G.S. 1-15(c), *except that if those time limitations expire before the minor attains the full age of 19 years, the action may be brought before the minor attains the full age of 19 years.*

N.C.G.S. § 1-17(b) (2021) (emphases added).

On its face, the tolling provision in subsection 1-17(b) applies to the professional malpractice claims of minors, to the exclusion of subsection (a) and except as provided in subsection (c). This Court has described the interaction between subsections 1-17(a) and 1-17(b) as follows:

> [For a professional malpractice claim asserted by a minor, subs]ection 1-17(b) . . . reduces the standard three-year statute of limitations, after a plaintiff reaches the age of majority, to one year by requiring a filing before the age of nineteen. Thus, a minor plaintiff who continues under that status until age eighteen has one year to file her claim. The language of "Notwithstanding the provisions of subsection (a)" refers to this reduced time period to bring an action. Like subsection (a), subsection (b) still allows the minor to reach adulthood before requiring her to pursue her . . . malpractice claim, assuming her disability is otherwise uninterrupted. Removal of the disability either by reaching the age of majority or by appointment of a [guardian ad litem] triggers the running of the statute of limitations.

*King*, 370 N.C. at 471–72 (internal citations omitted).

Inasmuch as medical malpractice is a subcategory of professional malpractice, subsection 1-17(b) would supply the controlling statute of limitations for the medical malpractice claims of minors if the statute ended there. Indeed, prior to 2011, subsection 1-17(b) did govern such claims. *See id.* at 471 ("[W]hen a medical malpractice claim accrues while a plaintiff is a minor, N.C.G.S. § 1-17(b) tolls the standard three-year statute of limitations . . . ."); N.C.G.S. § 1-17 (2010).

In 2011, however, the General Assembly added subsection (c) to N.C.G.S. § 1-17. An Act to Reform the Laws Relating to Money Judgment Appeal Bonds, Bifurcation of Trials in Civil Cases, and Medical Liability, S.L. 2011-400, § 9, 2011 N.C. Sess. Laws 1712, 1716–17. As we acknowledged in *King*, subsection 1-17(c) "further narrow[s] the time period for a minor to pursue a medical malpractice claim." 370 N.C. at 471 n.2. *See generally LexisNexis Risk Data Mgmt. Inc. v. N.C. Admin. Off. of the Cts.*, 368 N.C. 180, 187 (2015) ("[A] specific provision of a statute ordinarily will prevail over a more general provision in that same statute. . . . [T]he later addition of a specific provision to a pre-existing more general statute indicates the General Assembly's most recent intent." (citations omitted)).

Subsection 1-17(c) reads in full:

> *Notwithstanding the provisions of subsection (a) and (b) of this section*, an action on behalf of a minor for injuries alleged to have resulted from malpractice arising out of a health care provider's performance of or failure to perform professional services *shall be commenced within the limitations of time specified in G.S. 1-15(c), except as*

*follows*:

> (1) If the time limitations specified in G.S. 1-15(c) expire before the minor attains the full age of 10 years, the action may be brought any time before the minor attains the full age of 10 years.

> (2) If the time limitations in G.S. 1-15(c) have expired and before a minor reaches the full age of 18 years a court has entered judgment or consent order under the provisions of Chapter 7B of the General Statutes finding that said minor is an abused or neglected juvenile as defined in G.S. 7B-101, the medical malpractice action shall be commenced within three years from the date of such judgment or consent order, or before the minor attains the full age of 10 years, whichever is later.

> (3) If the time limitations in G.S. 1-15(c) have expired and a minor is in legal custody of the State, a county, or an approved child placing agency as defined in G.S. 131D-10.2, the medical malpractice action shall be commenced within one year after the minor is no longer in such legal custody, or before the minor attains the full age of 10 years, whichever is later.

N.C.G.S. § 1-17(c) (emphases added).

The first sentence in subsection 1-17(c) unambiguously declares that its tolling provision—not those in subsections 1-17(a) and 1-17(b)—applies to the medical malpractice claims of minors. It further states that such claims must be filed "within the limitations of time specified in G.S. 1-15(c)" unless they fit into one of the exceptions in subdivisions 1-17(c)(1) through (c)(3). In other words, subject to the exceptions in subdivisions 1-17(c)(1) through (c)(3), subsection 1-17(c) eliminates tolling of the medical malpractice claims of minors.

The parties agree that this case does not fall within any of the exceptions in subdivisions 1-17(c)(1) through (c)(3). We concur. Plaintiff was not under the age of ten when "the time limitations specified in [subsection] 1-15(c) expire[d]," nor does the record anywhere indicate that he has ever been adjudicated "an abused or neglected juvenile as defined in G.S. 7B-101" or placed "in legal custody of the State, a county, or an approved child placing agency." N.C.G.S. § 1-17(c)(1)–(3). Consequently, subsection 1-17(c) required plaintiff to commence his lawsuit within the time frame set out in subsection 1-15(c). Because plaintiff failed to do so, his claims are time-barred.

In reaching the opposite conclusion, the dissenting judge in the Court of Appeals reasoned in part:

> Section 1-17(c) is itself an exception to the general rule applicable to minors injured by professional negligence set forth in Section 1-17(b). Indeed, Section 1-17(b), as amended, makes this express. N.C. Gen. Stat. § 1-17(b) ("Notwithstanding the provisions of subsection (a) of this section, *and except as otherwise provided in subsection (c) of this section . . .*" (emphasis added)). As such, Section 1-17(b) remains generally applicable unless one of the exceptions under Section 1-17(c) applies. As in Section 1-17(b), the language in Section 1-17(c) of "Notwithstanding the provisions of subsection (a) and (b) of this section" references the reduced time period to bring an action in the three instances to which subsection (c) is applicable.

*Morris*, 285 N.C. App. at 156 (Hampson, J., dissenting) (alteration in original). Simply put, the dissent in the Court of Appeals would apply the tolling provision in subsection 1-17(b) to any medical malpractice claim alleged by a minor that does not

fall within one of the exceptions in subdivisions 1-17(c)(1) through (c)(3).

The dissent's strained reading of N.C.G.S. § 1-17 cannot be squared with the statute's plain meaning. *See Frye Reg'l Med. Ctr., Inc. v. Hunt,* 350 N.C. 39, 45 (1999) ("Where the language of a statute is clear, the courts must give the statute its plain meaning . . . ."). As we have seen already, subsection 1-17(c) exempts the medical malpractice claims of minors from the tolling provisions in subsections 1-17(a) and (b). *See* N.C.G.S. § 1-17(c) ("Notwithstanding the provisions of subsection (a) and (b) of this section . . . ."). Subsection 1-17(c) mandates that such claims "be commenced within the limitations of time specified in G.S. 1-15(c), except" when they fall under (c)(1), (c)(2), or (c)(3). *Id.* Put differently, subsection 1-17(c) is an exception to subsections 1-17(a) and (b), and subdivisions 1-17(c)(1) through (c)(3) are exceptions to subsection 1-17(c).

In his primary brief to this Court, plaintiff insists that interpreting subsection 1-17(c) to subject his medical malpractice claims and those of similarly situated individuals to the standard three-year limitations period in subsection 1-15(c) would produce "patently unfair and absurd" results. He points out that pursuant to subdivision 1-17(c)(1), a child who is injured through the medical malpractice of hospital staff on the day of his birth has ten years—or until he "attains the full age of 10 years"—to sue for medical malpractice. On the other hand, under the reading of subsection 1-17(c) adopted by the Court of Appeals and endorsed by this Court, if the injury occurs instead on the child's thirteenth birthday, he has only three years to

bring a claim. According to plaintiff, the provisions of N.C.G.S. § 1-17 "cannot possibly be intended to yield this type of result, where a claim for one child brought ten years later is not considered stale but brought by an older child would be barred if filed three years and a day following the negligence."

In our view, the scenario posed by plaintiff cannot accurately be characterized as absurd. The legislature may have reasonably decided that young children should have more time to bring their claims because older children often are better able to understand and describe their injuries and to grasp the import of a legal proceeding. Whatever the reason, whether the law ought to distinguish between minor plaintiffs in this way is a separate issue, and one on which the courts must defer to the legislature's judgment so long as the legislature acts within constitutional bounds.

Plaintiff had three years from the accrual of his causes of action in February 2015 to sue defendants for medical malpractice. Because he waited until 14 September 2020 to file his complaint, the Court of Appeals correctly held that his lawsuit is barred by the statute of limitations.

In front of the Court of Appeals, plaintiff argued that, as applied to his claims, subsection 1-17(c) "violates the Equal Protection Clause of both the United States and North Carolina Constitutions." *Morris*, 285 N.C. App. at 151. The Court of Appeals majority held that "plaintiff's constitutional challenge to [subsection] 1-17(c) . . . lacks merit." *Id*. The dissenting judge disagreed:

> [p]laintiff has raised . . . the colorable argument if
> [subsection] 1-17(c) did operate to require [p]laintiff to

> bring suit as a sixteen year old, while still under a legal disability and legally unable to do so, that as applied to [p]laintiff, such an application of the statute would violate his federal and state constitutional right to equal protection of the laws . . . .

*Id.* at 158 (Hampson, J., dissenting).

When the Court of Appeals issued its decision, N.C.G.S. § 7A-30(2) still provided parties with an appeal of right to this Court based on a dissent in the Court of Appeals. In *Cryan v. National Council of YMCA*, we explained what was necessary for a dissent to confer jurisdiction on this Court pursuant to N.C.G.S. § 7A-30(2): "To confer appellate jurisdiction, a Court of Appeals dissent must specifically set out the basis for the dissent—meaning the reasoning for the disagreement with the majority. A dissent that does not contain any reasoning on an issue cannot confer jurisdiction over that issue." 384 N.C. 569, 570 (2023).

In this case, the dissent registers disagreement with the majority's analysis of plaintiff's constitutional challenge, but it offers no reasons for that disagreement. We therefore lack jurisdiction under N.C.G.S. § 7A-30(2) to review the constitutional issues raised by plaintiff.[2] *See id.*

---

[2] Our dissenting colleagues argue that *Cryan* does not apply here because the dissenting judge in the Court of Appeals "raised and explained his disagreement with the majority on whether plaintiff's constitutional challenge [to subsection 1-17(c)] has merit." In fact, the dissenting judge provided no such explanation. As noted above, he merely described plaintiff's equal protection challenge as "colorable" without making any argument in support of his position. *Morris*, 285 N.C. App. at 158–59 (Hampson, J., dissenting). Like the dissenting judge in *Cryan*, he "did not expressly . . . provide any explanation for why [the majority's] decision was wrong." 384 N.C. at 574.

The three-year statute of limitations bars plaintiff's medical malpractice claims. No other issue is properly before this Court. Accordingly, we affirm the judgment of the Court of Appeals reversing the trial court's denial of defendants' motions to dismiss.

AFFIRMED.

Justice EARLS concurring in part and dissenting in part.

I concur with the majority's holding that N.C.G.S. § 1-17(c) creates a three-year statute of limitations for medical-malpractice claims brought by minors injured after the age of seven, even though they are legally incapable of filing suit until they reach the age of eighteen.

The majority's further conclusion that this Court lacks jurisdiction over plaintiff's constitutional challenge to this interpretation of subsection 1-17(c) is wrong as a matter of precedent and constitutional law. It is true that questions about this Court's jurisdiction under N.C.G.S. § 7A-30(2) will have no significance under the new version of the statute which eliminates the right to appeal based on a dissent, *see* An Act to Make Base Budget Appropriations for Current Operations of State Agencies, Departments, and Institutions, S.L. 2023-134, § 16.21(d), https://www.ncleg.gov/Sessions/2023/Bills/House/PDF/H259v7.pdf (eliminating right of appeal based on a dissent for cases filed in the Court of Appeals on or after 3 October 2023). But it still matters to the litigants in this case.

As a matter of precedent, plaintiff has met all the requirements for us to consider his constitutional challenge. Plaintiff argued his claim in the Court of Appeals, the dissenting judge raised the constitutional question as grounds for "diverg[ing] from the opinion of the majority," and the parties briefed the issue in our Court. *See State v. Hooper*, 318 N.C. 680, 682 (1987); *see also State v. Norris*, 360 N.C. 507, 511 (2006). Under our case law, that is enough to invoke our review. As this Court has explained:

> In determining which specific issues are properly before the Court in an appeal based upon a dissent, we must consider whether the issue was raised at the trial court and the Court of Appeals, whether the error was properly assigned in the record on appeal, and whether the issue was a point of dispute set out in the dissenting opinion of the Court of Appeals.

*In re R.L.C.,* 361 N.C. 287, 290, *cert. denied*, 552 U.S. 1024 (2007).

And when this Court has found a dissenting opinion insufficient to confer jurisdiction under section 7A-30(2), that dissent was far more threadbare than the one here. In *Cryan*, for instance, the dissent appended just one sentence to the end of the opinion: "Because I would determine jurisdiction to decide the constitutional issue is proper before the three-judge panel in Wake County, I would deny Defendant's petition for writ of certiorari." *Cryan v. Nat'l Council of YMCA of the United States*, 384 N.C. 569, 574 (2023) (cleaned up). We found that "single sentence" insufficient to trigger our review. *Id.* at 575. The "dissent did not expressly oppose the majority's" ruling that a party raised an as-applied constitutional challenge. *Id.* at 574. Even more, the opinion did not "provide any explanation for why that decision was wrong." *Id.* In view of those palpable deficiencies, we held that such a "vague, implied disagreement with the majority's decision" devoid of "any reasoning" could not confer jurisdiction on this Court. *Id.* at 575; *see also C.C. Walker Grading & Hauling, Inc. v. S.R.F. Mgmt. Corp.,* 311 N.C. 170, 176 (1984) (holding that when a dissenting judge "does not set out the issues upon which he bases his disagreement with the majority, the appellant has no issue properly before this Court").

Here, by contrast, the dissenting judge in the Court of Appeals raised and explained his disagreement with the majority on whether plaintiff's constitutional challenge had merit. *See Morris v. Rodeberg,* 285 N.C. App. 143, 158–59 (2022) (Hampson, J., dissenting). The dissent clarified why, in its view, plaintiff raised a "colorable argument" on his constitutional claim—that subsection 1-17(c), as interpreted, would "require [p]laintiff to bring suit as a sixteen year old, while still under a legal disability and legally unable to do so." *Id.* at 158. It flagged the constitutional problems with a three-year statute of limitations for plaintiff's medical-malpractice claim—that as applied to plaintiff, such a truncated window would violate his "federal and state constitutional right to equal protection of the laws including by depriving him of" a fundamental right. *Id.* And it specified the constitutional provision imperiled by subsection 1-17(c)—the Open Courts Clause. *See id.* at 158–59 (quoting N.C. Const. art. I, § 18 ("All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay.")).

Justice does not require, nor does our precedent demand, that we split hairs about whether a dissent sufficiently parsed a constitutional issue that it plainly raised. The confusion that would follow from opening that door makes clear the problem: Is one paragraph enough? How much detail is required? Must the dissent cite other authorities, and if so, how many? Those questions are not ones this Court

should spend its time answering. Especially here where the parties themselves did not argue that the dissent in the Court of Appeals lacked enough reasoning to satisfy section 7A-30(2).

Second, as a matter of constitutional law, this Court is sworn to uphold the constitutional rights of all citizens, including minors. Indeed, that duty is at its zenith for parties who cannot vindicate their rights on their own. *See* William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights*, 90(3) Harv. L. Rev. 489, 498 (1977) ("The very lifeblood of courts is popular confidence that they mete out evenhanded justice and any discrimination that denies [disadvantaged] groups access to the courts for resolution of their meritorious claims unnecessarily risks loss of that confidence."). In service of that principle, this Court wields jurisdiction to vary the provisions of any rule of appellate procedure "[t]o prevent manifest injustice to a party." N.C. R. App. P. 2; *see also Blumenthal v. Lynch,* 315 N.C. 571, 578 (1986) (explaining that Rule 2 grants us the "residual power to suspend or vary operation of our published rules" when "the justice of doing so or the injustice of failing to do so appears manifest to the Court"). We owe it to these parties to consider the constitutional issues that have been properly raised and briefed in this case.

Justice RIGGS joins in this concurring in part and dissenting in part opinion.